Can PENZO v. Consolidated Edison Company at all? Mr. Moore, whenever you're ready. Good morning and may it please the Court. My name is John Moore and I represent Emily PENZO, the appellant in this action. Emily PENZO's trial to prove that her employer discriminated against her was marred by effectively unexamined allegations of witness intimidation and by the mistaken exclusion of relevant admissible evidence. This Court should remand the matter to the District Court to correct those prejudicial errors. To start, the District Court applied an incorrect legal standard to the Rule 59 motion Ms. PENZO brought after trial that included sworn allegations that there had been intimidation of a rebuttal witness by defense counsel. Rule 59 is an appropriate vehicle for bringing such a claim. The rule states that it enables the Court to provide a new trial for any reason heretofore that a new trial could have been granted at law. Attorney misconduct clearly falls within that domain. This Court in the Crockett decision, the courts in Lee. If I can just jump in to kind of zero in on the issue. I think the question isn't so much whether or not it's inappropriate to consider the claim under Rule 59. I think the question is what is the prohibition on the judge considering it otherwise under Rule 60. I understand that your view is it should have been this. But I guess if your argument is it was improper for the court to convert it, which judges do at times. They sometimes will take a motion and consider it under a different rule than what it was filed under. So what's the impropriety in that? Well, a couple of points. The first is that there's simply no authority that gives the District Court discretion to convert a Rule 59 motion to a Rule 60 motion because of the subject matter that that's raised. Is there authority that prohibits that? No. I'm unaware of any authority blessing that. And let me pivot from that to a second point, which is that the reason that it is harmful to Ms. Penzo for this conversion is that the purpose served by a Rule 60 motion is different than the purpose served by a Rule 59 motion. The reason that Rule 60 motions have a heightened clear and convincing evidence requirement is that it's essentially extraordinary relief to grant to set aside a judgment up to a year after it's become final. Because of that extraordinary nature of relief in a Rule 60 motion, there's a heightened burden of proof in order to show that one is entitled to that. What is missing in this instance in particular is any reason why that heightened burden should apply here. Rule 59 is a run-of-the-mill, it's a pretty standard practice at the end of a trial. The parties almost always file a Rule 59 motion. It doesn't implicate those finality concerns that are present when a Rule 60 motion is brought long after the judgment has become final. But doesn't it implicate some of the same concerns about being an extraordinary type of remedy? I don't think it does, Your Honor. And this is demonstrated by the fact that Rule 59 is judged and evaluated by a different standard than Rule 60. It would be an odd rule that some versions of trial misconduct are reviewed under the lesser standard of Rule 59, but that allegations of witness tampering and intimidation, which goes to the heart of the trial process of the justice system, that the Court had the discretion, without real reason, to elevate the burden of proof that's required to address that serious misbehavior that would require it to establish that and that claim alone by clear and convincing evidence in a way that Rule 59 motions generally do not. So the Court, there's no authority that would grant the trial court the authority to do that, and there's good reason not to allow the trial court to elevate the burden of proof required for the most serious sorts of allegations that can and often are brought under a Rule 59 motion. The prejudice here was clear in that Ms. Penzo was required to show this misconduct by a burden of proof that is beyond what she otherwise would have been required to do, to meet, had the Court considered the motion under the correct legal standard, the standard that matches the motion that was actually brought. The fact that the Court applied the wrong legal standard is a question that this Court reviews de novo, so it's not, you know, the Court looks and says, is Rule 59 or Rule 60 the appropriate method, the appropriate standard to apply here? And so there's no deference to the trial court's determination there. And given that there's no authority supporting that heightened burden of proof, that there's no reason that the Court really did so here, then the Court, the remand is appropriate. That's the run-of-the-mill relief when a Court applies an incorrect legal standard. Can I ask you a question about your argument that the trial judge improperly prohibited the plaintiff from authenticating her own medical records? I'm not sure I see that ruling in the record. Your brief is pointing us to page 69 of the appendix in which the judge said you can't authenticate them, meaning medical records, while the plaintiff was on the witness stand. But when you look at page 69, I think it's pretty clear that the you in that sentence is trial counsel, not the plaintiff herself, and it comes in the context of a conversation about the adequacy of the certification. Where do you see the trial judge squarely ruling that the plaintiff could not authenticate these medical records herself? So I stand by page 69 because at the time that the Court is directing that statement to trial counsel, Ms. Penzo is actually on the stand. So to say that you can't authenticate a document while Ms. Penzo is testifying, I would say that that supports our argument. I would also point the Court to page 348 of the appendix, A348. This is part of the Rule 59 decision. And at that point, there is a line at which the district court stands by the trial level during trial ruling in which she says that the plaintiff could not authenticate her medical statements. But was there an offer, an explicit offer for the plaintiff to do that? And if so, where? Well, no, there wasn't. And the reason for that is because of that statement at 69, that the trial counsel was trying to introduce the documents. The trial court said you can't authenticate them. Trial counsel understandably moved on at that point rather than try to double down on further attempts to introduce the statements. After the Court had categorically ruled that they couldn't be authenticated. Again, that's error because under Rule 901, which is actually the authentication standard for trial testimony, Ms. Penzo was in a position to authenticate her statements for all of the reasons that are offered in our brief. I see that I'm out of time. I'll happily answer any further questions the Court has. And I just want to also note that while we haven't addressed the attorney's fees issues, I will stand by our brief on that. Thank you. Thank you very much. Good morning, Your Honors. And may it please the Court, my name is Ephraim Pierre and I represent the appellee, Con Edison, in this appeal. After four days of trial, over 60 exhibits and nine witnesses, a jury carefully rejected virtually all of Ms. Penzo's claims and awarded her about $203,000 in back pay, which is a fraction of the $16 million she sought in punitive and compensatory damages. Apparently, Ms. Penzo is disappointed with this result and she now files post-trial motions seeking to undo the jury verdict and the district court's sound decisions and post-trial motions enduring the trial. Ms. Penzo's disappointment is not a reasonable basis to set aside the jury's careful verdict and the district court's sound discretion. Each of Ms. Penzo's arguments are meritless and the rulings and judgments below should be affirmed. I'll address some of the arguments that have previously been addressed here so far in turn. First, the district court properly rejected Ms. Penzo's meritless and unsubstantiated allegation of witness tampering and it was not an abuse of discretion for it to forego an evidentiary hearing. Can I just point you directly to the sort of initial question that was raised about the conversion of the motion into something that was not what she filed? How is that justified given that there are different standards for Rule 59 and Rule 60? Yes, that's correct, Your Honor. So there are different standards for the two rules here and Ms. Penzo's allegation squarely falls within Rule 60 in this instance. As stated during the previous colloquy, Rule 60 does have extraordinary relief, but it matches the extraordinary allegation that's made here. She alleges something here that borders on a fact. But the extraordinariness of the relief doesn't dictate. I mean, if someone is making a claim and they're saying, I'm seeking this relief because of this error that occurred, what is the rule that justifies the court saying, I know you filed this under Rule 59, but I'm going to consider it under Rule 60, and this rule has a higher standard. What's the justification for that? Well, the justification for that does go back to the specific allegation that's made and the controlling precedent that's here. If not, all the cases that are cited by Ms. Penzo in her brief do not deal with witness tampering. In fact, they deal with a substantially different situation entirely, which is improper inferences that are suggested by counsel during summation or argument. I think this Court's ruling in Pappus is perhaps the best place to look for the dividing line. That's where this Court specifically said that the misconduct that was considered under Rule 59 was one of conduct of counsel in argument that causes prejudice. There's no argument allegation being raised here by Ms. Penzo. What she's actually alleging here is that an extraordinary situation occurred, that a member of the bar sought to intimidate another witness just prior to their testimony, and because of that, there was a fraud ruling. Rule 60 exists exactly for that purpose. It's to set aside that judgment and to revisit those allegations. But noting that Rule 60 applies properly here, turning quickly to the factual allegations, the Court found that these allegations were unsubstantiated based upon the careful affidavits that were submitted by all eyewitnesses to this interaction, including the implicated attorney, as well as Ms. Griffin, the rebuttal witnesses, and other third parties who are in direct eyewitness of this situation. Did the Court say that even if the clear and convincing evidence standard did not apply, she would rule the same? In the lower court's ruling, they did not apply 59. They didn't pivot between the two rules to determine whether or not under Rule 59 these allegations would have carried the day. But I do think that that isn't necessarily an error of law that would require remand and the like because these allegations so clearly fall within Rule 60 based on prior precedent and the allegations that were offered. But if this Court sitting were to take a look at Rule 59 and apply it in this instance, I think you reach the same result. We have unsubstantiated allegations that were thoroughly vetted by the Court, including witness testimony that was observed by the district court, which did not raise any suspicions at the time. These allegations were raised essentially untimely, and only after which a jury verdict was rendered that apparently Ms. Penza was dissatisfied with. And to this day, during this appeal and... I'm sorry. When you say the allegations are unsubstantiated, I mean, an affidavit was submitted by the witness who was allegedly tampered with. And, yes, as you noted, there were competing affidavits. I mean, to say it's unsubstantiated, affidavits were submitted. The Court didn't have a hearing, and so essentially the Court's ruling on the papers, but there was not... I don't know that I would just characterize it. I don't know that I would think it's a fair characterization to say it's unsubstantiated. Right. So the title of being unsubstantiated was one that was attached by the district court judge after carefully reviewing the affidavits. What we have at issue here is one sole interaction between a person and another person. Affidavits were submitted by all eyewitnesses, including one key eyewitness that was similarly identified by both parties to this interaction. And quite notably, this third party substantiated the affidavit submitted on behalf of the attorney that was implicated in this action. Well, it sounds like, though, I mean, the judge is making a credibility finding here. I think the judge here sat in a position to assess the quality of the testimony of the rebuttal witness because we have to remember what the allegation is. It's not so much that this witness was intimidated or scared about their testimony. It was that the intimidation was the but-for cause for not soliciting or providing additional evidence during their testimony. A key aspect of the lower court's ruling here by Judge Risposal is that she observed Ms. Griffin's testimony. And during that time, she did not see an individual who was distraught or anxious beyond what a normal witness would. And I think another thing to pay attention to here, going back to that framework for looking at this, the but-for link, is the actual testimony of Ms. Griffin. Ms. Griffin testified at length regarding the alleged disparate treatment she believed that Ms. Penzo was subjected to. This included various things, scrutiny of her bathroom usage, the removal of direct reports that may have impacted her workload as well as her compensation, the feeling that she herself was described as a black cloud amongst the workplace, within the workplace. All these items were solicited by counsel, offered for the jury, and the jury considered it amongst its deliberations before rendering its verdict. What's critically missing from Ms. Penzo's argument and the papers up until this day, including the affidavits, is what additional information would have been offered but for this interaction. And that ultimately amounts to Ms. Penzo seeking a proverbial second bite at the apple here. Moving on to the second issue that's implicated here, the medical records. We believe that this ruling is completely sound based on the implicated rule here. Rule 90211 is a simple rule that actually advantages litigants like Ms. Penzo. She can provide medical records with certifications from her treating physicians or the custodians of those records. She need only do so before trial. That was not done here. On the second day of trial, just minutes before Ms. Penzo was going to continue with her testimony, that's when we were provided, or rather Con Edison was provided, with the certifications. Certifications which were inconsistent with the listed exhibits within the joint pretrial order, which triggered quite a bit of confusion just from the court in ruling on this issue. What's notable to understand here about this is that Con Edison was deprived of its opportunity to review those certifications, to understand what was being certified, and to critique it and make strategic decisions before trial related to this. Rule 90211 was specifically designed to prevent that sandbagging by providing other parties of notice of these records via certification. Ms. Penzo attempts to cure this by saying that a hearsay exception for diagnoses and treatments allows her to authenticate the records not made by her or held by her, but that's putting the cart before the horse. A foundation has to be laid first to move those documents into evidence, and then she can testify as to her own statements that's within it or statements relative to her own treatment. But even if that was an error, it is harmless because Ms. Penzo was able to testify at length regarding her own treatment. She mentioned at least three health care providers during her testimony, and in addition to that, she was able to testify about diagnoses, treatment that she received, medications she was prescribed, and various stressors. The key point here is that under the statutes that were issued for trial, there was no prerequisite that she have expert medical opinion offered for medical records. She can, and quite frequently in these cases, she's able to sustain her burden simply on her own testimony. Again, the jury heard it, the jury was instructed to that point, and they rendered their verdict. I see that my time is eclipsed, but I do refer to the court to our opposition briefing regarding the issues of fees. Thank you, Your Honor.  Starting with the issue of the Rule 59 motion. Defense counsel has never presented any authority that permits a party of a court, rather, the authority or discretion to upgrade the burden of proof that's required on a Rule 59 motion. He refers to the fact that it's extraordinary allegations, and I agree that they are extraordinary allegations, but as Your Honor pointed out, that is a different kind of extraordinary than the relief that's being sought in a Rule 59 motion. And again, it would be curious if extraordinary allegations such as witness tampering by defense counsel during the course of a trial had to meet a higher standard than statements that were improperly characterized to the record or otherwise deemed prejudicial to the jury. So he hasn't provided authority for the proposition that this has to be Rule 60, but neither have you provided authority for the proposition that it has to be Rule 59, perhaps. Why wouldn't the general principle that when you have a very general rule that could be on point for a specific posture and a much more specific rule that is also on point for specific governance over the general, why wouldn't that favor Rule 60? Well, this returns to the point earlier that Rule 60 ultimately serves a different purpose than Rule 59. And so this isn't a situation so Rule 59, you know, allows for a new trial to be granted for any reason that heretofore it would have been granted. And there's no allegation, there's no argument that witness intimidation and tampering wouldn't have given rise to a new trial prior to Rule 59 taking effect. The notion that because Rule 60 specifies attorney misconduct, that that ought to always prevail, I think is unwanted because, again, it creates a heightened burden for the most significant allegations that would give rise to a new trial. The implications of a Rule 59 motion simply aren't as great as they are in Rule 60, which can be brought up to a year in advance. Moreover, the listing of the grounds for a Rule 60 motion is as much a function of when those allegations have to be, when the motion has to be brought. So, for instance, attorney misconduct has to be brought at any reasonable time but no more than a year. Other allegations can be brought at any time, at any reasonable time. And so none of the factors that would actually, if the court is looking at this de novo, which it is, there's no reason that the court should say the correct rule here is that the district court and its discretion can jump up the burden of proof that a defendant or that a party needs to show because it wants to. That's not a reasonable exercise of discretion. It's not a correct rule and it doesn't serve any purpose in terms of forwarding the interests of justice in this or in other cases. What is your response to the idea that even under a Rule 59 analysis that this is not sufficient to get over the hurdle? That the testimony that there's, the evidence doesn't support that the misconduct, even if it occurred exactly as you alleged, did not impact or take away from the witness's testimony in a way that would have made a difference? So, two points on that. One, to the question that was asked of my friend. The district court never purported to rule under Rule 59, never said, even if I applied the lower standard, it doesn't matter here. It was a credibility determination that was made on a cold record. And I want to read directly from Ms. Griffin's affidavit on this point. Right, but just, I mean, if I can just pull you away from that. I'm saying let's accept your version that, in fact, the attorney said all these things to her, behaved exactly as alleged. The issue is, did this impact the witness's testimony? Did she not say something or say something that she would or would not have, but for this attorney having this interaction with her? Yes, and this is what I want to read from Ms. Griffin's affidavit directly. And this is page 85 of the appendix. Ms. Griffin said that the interaction left her feeling scared, rattled, and nervous. She felt intimidated and scared. She said that, but for that incident, she would have testified in detail as to the disparate treatment Emily suffered, the vast discrepancies in discipline and hostile work environment Emily endured. All of those are the central key issues in this trial. The point that, well, the jury ruled against Ms. Penzo on some of these issues. We have a sworn statement from a witness who is going to testify on exactly those issues, that she did not give the full testimony that she would have given had she not been intimidated prior to testifying. Part of, I guess, what I'm wondering about, though, is that affidavit doesn't say, had she not pressured, had the attorney not had this interaction with me, I would have testified about X and Y and Z. Instead, it says, had this attorney not treated me this way, I would have given more detailed information about the hostile environment. But there are no details. There's nothing specified in that affidavit about that. That is correct. There's no dates given. There's no specific incidents that is offered in that affidavit. But I don't think that's required. There's no case law that the district court cited, that the defendant has cited, that I have found that a party alleging witness intimidation has to essentially provide the verbatim testimony, I would have testified that on this date, this person said these words to Ms. Penzo. That's just not a requirement. What is in place here is a sworn statement that she would have provided detailed information, detailed testimony regarding the key issues in dispute in the case, and that she didn't because of the conduct of opposing counsel. That, we would submit, is sufficient, at least for a remand, to determine whether this actually happened and what the next steps should be. Thank you very much. Thank you. Thank you both. We will reserve decision on this.